Good morning. It's good to be here again. I'm Brian Brooks. I'm here on behalf of Katie Blevins in this case about life insurance. That's my topic this week. This is one of those cases that has a situation that you think just never happens. Dr. Travis Richardson applied for a life insurance policy in January of 2021, filled out the application, went through the physical, did all of those things, and then the policy was issued on March 11 of 2021. March 12, 2021, Dr. Richardson happened to ask his insurance agent, when does coverage go into effect? The insurance agent said, today. If you die today, you'll be covered. Nobody thought Dr. Travis Richardson was going to die today, and he didn't. He died three Pacific Life Insurance Company had sent a package of information by FedEx to the Champion Agency, which did back office support for Dr. Richardson's insurance agent, dealing with all kinds of technicalities on delivery and acceptance and correction of policy issues. So we're here today because Pacific Life has denied coverage for a policy that Dr. Richardson had paid for before he died. This reminds me that insurance coverage is one of those things where you don't always have it, even if you've paid for it. It's one of the very few things in life that seem to be that way. I will cut straight to the point about where we're going. The policy itself says, under a heading of policy specification, this is the summary of coverages effective on the policy date. The policy itself says the policy date is March 11, 2021. It doesn't say anything about delivery. It doesn't say anything about acceptance. It doesn't say anything about anything else. It just says that the summary of coverages that are effective on the policy date. Then the policy date is further defined as the policy specifications and means the date the policy and associated riders become effective. Granted, there are other parts of the application. There are other parts of the policy. There are other parts of this set of mailings that was sent to the Champion Agency on March 11 by Federal Express that have other things that you have to do for the policy to be effective and pay a death benefit. Under Arkansas law, our point is you can't give us with one part of the policy and take us away with another part of the policy and then get summary judgment in a case over whether there was coverage under the policy. Isn't there in the policy, though, a difference between effective and in force? That's Pacific Life's point and the argument, as I understand it, hinges on this phrase. A policy in force means a policy is in effect and provides a death benefit. Pacific Life says that is a signal to anybody reading the policy that a policy can be in effect but not have a death benefit to it. I'm a reasonably bright guy. I'm not a genius, but I'm middle and smart. I read that language and it says to me just as easily that when a policy is in effect, it pays a death benefit. The language is circular. When I worked my way through all of this policy language, I kept coming back to the fact that I am promised in the policy is in effect and pays a death benefit on the policy date. Do you agree that the policy has to be delivered either to be in effect or in force? I don't agree with that because of this particular language in the policy. It defines when the death benefit is available as of the effective date. I agree that Pacific Life could make that a condition. I don't agree that it effectively did so because of this policy language. My question really is if you read the application in conjunction with the policy, you do have some other information that might lead a reasonable person to reach a different conclusion than you just did. That information relates to the temporary insuring agreement, which basically provides that if you pay some money, an estimated premium cost at the time that you file the application, temporary insurance coverage is in place. That temporary insurance coverage is a little bit different than the policy coverage, but it stays in force until such time as the policy is delivered. If you read that in conjunction with the language which you say is circular and ambiguous, it does explain the process. Now, can you rely on the application language to interpret the policy, or is that verboten? I think under the Arkansas cases that we have cited, when the policy is very clearly, this is when the policy is in effect, and there is other language in the policy or the application becoming part of the policy by incorporation that contradicts that language, you have a question of fact, either if there's a... Summary judgment at that point, that's a fact question for the ultimate finder. That's correct. And I spent a lot of time in the brief because it was an interesting topic to me. I don't know if it was interesting to you, but it was interesting to me about what happens when you have this question. Number one is you can't get summary judgment in favor of an insurance company when you have this sort of contradictory language fighting against itself. That's the first point. The second point is, okay, so what do you do? Well, if both sides come to the court with extrinsic evidence indicating what the contradictory language means, then it's a question of fact for the jury under the Arkansas cases. If they don't come to the court with extrinsic evidence about what these two phrases mean, the bad phrase for the insured goes away, and the insured is eligible for summary judgment or judgment as a matter of law because you read away the contradictory language. You're about to ask me a question. No, I'm just thinking. But you did read that I was thinking, but go ahead. So I think that if this particular policy language was not in the policy itself, I would not be here today, quite frankly. But I believe that when you look at the policy itself and the contradictory terms, you get to the Smith case that we have cited in the brief and talked so much about in the brief where you had an uninsured motorist policy that said you're insured whether you're riding in a car or not. And then another phrase within the policy that said you're insured if you're riding in a car. And the court said you can't have those fight with each other. This language fights with itself, too, for the very same reason. And you can't have summary judgment on that basis. That is the crux of the position that we bring before you, and the error that Judge Moody made in granting summary judgment was not recognizing that point. I think I want to hit preservation for just a moment because Pacific Life says I didn't bring this, or we didn't bring this argument up at trial. I think that's at the trial court level. I disagree with that. We cited in the reply brief document 88, pages 7 through 12, when this particular argument over the ambiguity of the policy language was discussed for the trial court's edification. And then I noticed when I was preparing for argument that the trial court actually ruled on it. In addendum page 5, he writes, first she argues that the policy is ambiguous as certain terms are not defined, including delivered, accepted, effective, and in effect, making the policy circular, vague, ambiguous, and contradictory. That sounds a lot like what I just said. And then he says, viewing the facts most favorably to her, she argues, the policy can be read in force as of the policy date. So preservation, I think, we're good on. The argument is preserved for appellate review. And that's important to me because I actually write a little bit about preservation and I was a little bit worried with myself when I got the brief and I was told this was not a preserved argument. I think, so that is our primary point. That, to me, is what this case primarily turns on. And I think for all of the reasons that we've stated, Judge Moody got this wrong and we should go back for a trial on the merits. If there's extrinsic evidence of these terms, if there is not, then Ms. Blevins would be entitled to summary judgment when she makes that motion. But she has never made that motion. I want to touch for a very brief period of time on the bad faith issue. I've got to tell you this has never been, this is something that I've never seen happen before. Where the trial court said, file an amended complaint by a certain date, and then an amended complaint was filed by that certain date, and then it was struck for being filed. Now, I know that there are other arms and legs to that particular problem where Judge Moody said, I didn't expect that much detail, but the order didn't say, don't file a detailed amended complaint, file an amended complaint fleshing out your bad faith arguments. And the lawyers did. Then they were punished for doing it because there was not enough time to get ready for trial. Then the trial date got moved by four months, but the complaint stayed struck. That, to me, is an abuse of discretion. To tell somebody to do something, they do it, and then you sanction them for doing it seems to me to be a little beyond the pale. Moving to the merits of the bad faith, I don't want to over-egg my pudding here. Either complaint, the first amended or the second amended, alleges essentially that Pacific Life said uh-oh when it got this situation and realized it had a way to maneuver around it and ignored this policy, effective date, language, and conjured up everything else to get around paying this $4.8 million policy. At the pleading stage, that is sufficient enough to survive a motion to dismiss under Arkansas' bad faith law. And so the whole thing should be reversed and sent back to the trial court for further proceedings. I'm right at my rebuttal time. I'll take the rest of my time on rebuttal. You may. Mr. Nyman. Thank you, Judge Benton, and may it please the court, John Nyman here for Pacific Life today. The contractual obligation that we've been talking about for the last 12 minutes wasn't formed at the time of Dr. Richardson's death for two interrelated reasons, only one of which Mr. Brooks has touched on. The one that he did touch on is that the policy wasn't delivered to or accepted by Dr. Richardson before he passed away. The second reason that this policy, subject only to amendments, which Dr. Richardson was required to agree to in order to form a full contract that would give rise to this obligation, without delivery there was no contract and without that signature on the amendment there was no contract either. So for that reason, there was no valid claim for breach of contract here. There also was no valid claim for bad faith. Well, the amendment's all trivial, counsel. I disagree, Judge Benton, for at least a couple of reasons. First of all, Judge Erickson has touched on the declarations to the application itself, which to be clear is absolutely part of the contract here. Declaration 15 expressly says so, then the policy, once it is issued, says that the application is part of the contract. But Declaration 1, which I think is on page 722 of the appendix, says that if Pacific Life makes any changes to the application, those need to be sent to Dr. Richardson and Dr. Richardson needs to sign on to those things. So there's a contractual agreement that that's the way things are going to work and there Maybe more importantly, Judge Benton, I don't think that these things are minor or trivial. One is the birth date, which of course, we're talking about a difference of 17 days here and not a difference of years, but the birth date is a pretty critical aspect of a life insurance policy. Also, the zip code was wrong here and these are things that it's within certainly Pacific Life's prerogative to try to get right on the front end of things. Things go wrong in insurance policy administration if an insurance company simply makes assumptions about what the insured wanted. So it certainly can't be faulted here. Pacific Life can't be faulted for noticing that there were problems with the application. Basically, it was Dr. Richardson's offer to Pacific Life here and saying to Dr. Richardson, before we issue your application or agree to these amendments to your application. This is Arkansas law. Do you think the Arkansas Supreme Court would say they're trivial and don't affect the contract? No, I think the Arkansas Supreme Court What's your best case on it? Well, I don't have a particular case that deals with these specific issues, but I think the Arkansas Supreme Court applies and interprets contracts as they are written. Declaration 1 to the application here makes it crystal clear that if there are changes to the application, they need to be signed onto by the insured before you can have a contract, before a contractual obligation is formed. I believe the Arkansas Supreme Court would apply the unambiguous terms of Declaration 1 in that manner and say that there was no contract here, if only because of the amendment issue. I also think it would say that this policy wasn't delivered as well and that there was a delivery requirement under the contract. So I'll turn back to that issue, which was the principal focus of Mr. Brooks' argument. This contract is not ambiguous as to whether delivery is required before death benefits are payable. The opposing counsel's argument to the contrary is based on an untenable interpretation of a single part of the policy, but that's not how contract interpretation works in Arkansas and that's not the way that Arkansas applies insurance principles. The right place to start is with the application. As Judge Erickson suggested, several parts of the application really can't be read in any other way as making crystal clear that you have to have delivery of the contract before it is enforced. We have emphasized Declaration 4, which is the provision that says coverage will take effect when the policy is delivered, only if at that time each proposed insured is alive and all answers in this application are still true and complete. But frankly, as I think Judge Erickson may have been suggesting earlier, even clearer evidence is in the following Declaration, Declaration 5, which deals with these TIAs, this Temporary Insuring Agreement. That provision says that if the insured has given money with the application and received the TIA, and the coverage amount under the application is greater than the coverage amount under the TIA, then if the proposed insured dies before delivery, they're going to get the amount associated with the TIA, not the amount associated with the death benefit under the policy. No real way to read that language as saying anything other than that before a death benefit is payable, you absolutely have to have delivery. So at the other end of the contract, as I said before, this application really, I think it's helpful to view it as the offer on this contract. The other end of the contract we have here is really more of a counteroffer in light of the amendments that are at issue, but that's the policy that goes out on March 11th. In that policy there are three critical pieces of language confirming what the application has already said. The first is that the summary description provides on page 841 of the appendix that provided the policy is enforced, a death benefit is payable as described in the policy. So it's crystal clear from there that a death benefit is enforced. Second critical bit of textual evidence is in the definitions section on page 844, which says that enforced means that a policy is in effect and provides a death benefit on the insured. Judge Kobes had asked about that particular definition. I think it's very instructive because if Mr. Brooks' interpretation of the contract were right, the policy simply would have read enforced means a policy is in effect. The need for the additional language regarding the death benefit being provided shows that there's a difference between being enforced and in effect. In effect means something in addition to enforce. Third bit of textual evidence is on page 845 of the appendix. That's in the death benefit section and it says that this policy is enforced as of the policy date subject to your acceptance, meaning the insured's acceptance of the delivered policy and payment of the initial premium. All that language lines up with what the application says. So what do we have that Mr. Brooks says contradicts that language or at least renders it ambiguous? It's really a single page of the policy when you'll find on appendix page 793 that provision sets out what the policy refers to as a summary of coverages that are effective on the policy date. It is little more than a table. It's not full of text or explanation and that language says nothing about the conditions under which a death benefit will be payable. Any reasonable insured who is reviewing that page, the summary of the coverages, will be know that they've got to read more if they want to figure out the conditions under which a death benefit is payable. And really the first page of the policy specifies that the death benefit is payable as set forth in the provisions regarding the death benefit itself. So I don't think the Arkansas Supreme Court would look at this matter and say this creates ambiguity in any sense. The Smith case, which Mr. Brooks has relied on, dealt with quite a different issue. There you have an insurance policy that was contradictory in terms of the way it described coverage. In one particular provision it said the following persons basically are covered or the following situations are covered and those include in a parenthetical situations whether or not the insured was driving their car. In the other provision, those particular policy provisions read in isolation might suggest that in fact the person would not be covered if they were not in their car. The Arkansas Supreme Court said that's a contradiction. We cannot reconcile those provisions and therefore we've got to adopt the interpretation that favors the insured. We don't have that situation here because there isn't a contradiction between the language we see in this table on page 793, the summary of coverages and the provisions setting forth how a death benefit is payable. The death benefit provisions are more specific naturally and I don't think it's reasonable to read this contract as suggesting that based on what you see on page 793 in this table that you have a death benefit no matter what. Certainly there will be conditions attached to that and those will be set forth in the unambiguous language, not only the policy provisions but also the application that preceded it. One point that Mr. Brooks has not touched upon is what I've understood Ms. Blevins secondary argument regarding delivery to be and frankly as the district court said, it understood the issues in front of it to largely be about whether this policy was actually delivered, not whether delivery is a requirement under the policy. The district court rightly found that this policy wasn't delivered. I think that that conclusion flows ineluctably from binding Arkansas Supreme Court decisions. We have to go pretty far back to point to those decisions but that's because the requirement of delivery is that well established in Arkansas insurance law. A case called Clark v. First Colony from 1924 quite clearly says that the mere transmission of a policy to the agent with further conditions on delivery does not amount to delivery for purposes of Arkansas law. I misspoke. That was not Clark v. First Colony. Clark v. First Colony was the Arkansas Court of Appeals decision applying the 1920s era decision in New York Life v. Mason I believe. But both of those decisions stand for the proposition that at least in the circumstances we have here where this policy was uploaded to an internet portal that was designed, no one seems to disagree, solely for Mr. Brashear's reference purposes. Those decisions establish even though there was no internet then and no portal then that the mere uploading of that document or the mere transmission to the agent more to the point cannot be delivery for these purposes. I assume that the reason why the plaintiffs have taken a pretty dramatically different approach to the delivery issue on appeal is that those two decisions, Clark and New York Life, foreclose in this case any argument that delivery actually occurred through the portal. Turning to bad faith, the fact that there is no coverage under the policy for these two independent reasons means that there is no bad faith claim. But even if everything I've said about the contract is wrong, I'd like to underscore that the district court's decision as to bad faith ought to be affirmed. The first counterclaim in this case, the original counterclaim in this case, made no allegations of bad faith other than to simply say that the plaintiff or the defendant in this declaratory judgment action disagreed with the insurance company's administration and interpretation of the policy. The Arkansas law makes clear that that's not sufficient to allege a bad faith claim. So the only question I suppose is whether the district court is to be held to have abused its discretion by saying that Ms. Blevins went too far in this amended complaint and adding 30 new paragraphs in response to the district court's order. I think it's very difficult and untenable really to suggest that the district court abused its discretion in those circumstances for a couple of reasons. One is the district court's sua sponte granted Ms. Blevins the ability to amend the complaint in response to a motion Ms. Blevins had filed that didn't seek that relief. Ms. Blevins instead sought to amend her response to Pacific Life's motion to strike. So the district court made that decision on the assumption that the amended complaint was simply going to comport with the relatively limited changes that were in the response. Instead, the amended complaint came back with 30 new paragraphs making all sorts of additional new allegations of bad faith. For example, Ms. Blevins contended for the first time in the case that Pacific Life had violated insurance industry standards, had violated an internal code of conduct, had engaged in a pattern and practice of wrongly denying benefits in these circumstances and the like. The district court rightly said that given that we were one day away from the summary judgment deadline, given that discovery had long ago passed, that its initial decision, its initial sua sponte decision to allow the filing of an amended complaint for different reasons is one that it wanted to reconsider. That decision was by no means an abuse of discretion. For all these reasons, we'd ask the court to affirm. Thank you for the argument Mr. Dimon. Back to Mr. Brooks. I think I can cover all of this in three minutes. My colleague talks faster than I hear sometimes but I'll try to get through everything. We never get to these two contract positions that Pacific Life advances when we focus on the language that I have pointed the court toward. To me, summary of coverage is effective on the policy date that then lists the coverages including the death benefit. Policy date is shown in the policy specifications and means the policy date and associated riders become effective. Enforce means a policy is in effect and provides a death benefit. Altogether, leave me a person of reasonable intelligence to believe that if I have a policy that tells me all of those things on March 11th and I get a logical, reasonable reading of the language. When you put that in contrast with all of those other provisions, they contradict one another. Under Arkansas law, that means we have a case for the jury. I've been criticized about my interpretation of the policy and I've criticized Pacific Life about their interpretation of the policy. That to me says, folks, we juries are for to sort out things like this when these types of provisions contradict one another in an insurance policy. On the trivial things issue, I've looked. I'm not the world's greatest researcher but I'm pretty good. I haven't found anything quite like this in Arkansas law where Arkansas has dealt with delivery conditions that have things like my birthday is listed as the 13th instead of the 30th and my zip code is listed as 72506 when it's 72501. There doesn't appear to be any Arkansas case out there. I think that is trivial. I think that has nothing to do with whether there should be coverage in this case, which is spoken to by the fact that all Pacific Life required was accept these changes. It was really no big deal. Oh, on the bad faith, I still have never seen a situation where a district court ordered somebody to do something and then the person did it and they got in trouble for doing it. That to me seems to be an abuse of discretion on its face. For all of these reasons, we ask that the case be reversed. Thank you. Thank you both counsel for the argument. Case number 23-2596 is submitted for decision by the court.